UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| CEQUAN WILSON, | ) |
| | ) |
| Plaintiff, | )  Civil Action No. 5: 22-324-DCR |
| | ) |
| v. | ) |
| | )  **MEMORANDUM OPINION** |
| OFFICER IBARRA, et al., | )  **AND ORDER** |
| | ) |
| Defendants. | ) |

*** *** *** ***

This matter is pending for consideration of a joint motion to dismiss or, alternatively, for judgment on the pleadings filed by Defendants Officer Ibarra and the Lexington-Fayette Urban County Government (LFUCG). [Record No. 9][1] The motion has been fully briefed and is ripe for review. For the reasons that follow, the defendant's motion will be granted, and the plaintiff's claims will be dismissed.

First, the Court will address a response to the defendants' reply filed by Wilson after briefing on this matter was closed. The pleading amounts to a sur-reply, which the Local Rules neither contemplate nor permit absent prior permission from the Court. *See* LR 7.1(c), (g). Wilson did not seek or obtain such leave. Further, a sur-reply is generally only granted to allow a non-movant to address arguments or evidence raised for the first time in a reply. *Key v. Shelby County*, 551 F. App'x 262, 265 (6th Cir. 2014) (citing *Seay v. Tennessee Valley*

---

[1] Wilson also sued Defendants Frans and the Fayette County Detention Center ("FCDC"). However, after initial screening of Wilson's complaint pursuant to 28 U.S.C. § 1915, 1915A, the undersigned dismissed Wilson's claims against Frans and substituted the LFUCG as the proper defendant regarding Wilson's claims against the FCDC. [Record No. 7, 13]

-1-

*Authority*, 339 F.3d 454, 481 (6th Cir. 2003)). In this case, the defendants did not raise any new arguments or cite to new evidence in their reply. Therefore, the filing of a sur-reply is neither necessary nor appropriate here. *See Liberty Legal Found. V. Nat'l Democratic Party of the USA*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) ("As many courts have noted, '[s]ur-replies...are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'"). As a result, Wilson's submission will be stricken.

## I.

A motion to dismiss for failure to state a claim upon which relief may be granted filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). And a motion for judgment on the pleadings filed pursuant to Rule 12(c) is reviewed under the same standards as a motion to dismiss filed pursuant to Rule 12(b)(6). *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017). To survive either a motion seeking relief under either rule, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Hindel*, 875 F.3d at 346-47 ("To survive a Rule 12(c) motion, 'a complaint must contain direct or inferential allegations respecting all material elements under some viable legal theory.'") (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The pleading standard for a civil complaint under Rule 8, Fed. R. Civ. P., "does not require detailed factual allegations, but it demands more than

an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks and citation omitted). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Thus, "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 556 U.S. at 557).

When considering the defendants' motion, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). In addition, because the plaintiff is proceeding without the benefit of counsel, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012). Even so, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Moderwell v. Cuyahoga Co., Ohio*, 997 F.3d 653, 659 (6th Cir. 2021) (quotations omitted). With these rules in mind, the Court now turns to the plaintiff's allegations.

## II.

The plaintiff's claims arise from a physical altercation involving Wilson and another inmate housed at the FCDC. Wilson contends that, on August 27, 2022, he was assigned to clean Housing Unit H as part of his work detail. [Record No. 1] He states he first stopped in Unit G to see if a friend had a shot of coffee, but inmates there were asleep, so he proceeded to Unit H to check the "subday" room to see what needed to be cleaned. [*Id.* at p. 2] According to Wilson, Unit H is where "IBP" (or Inmate Behavior Program) inmates who are "too dangerous to be in general population" are housed and it is "usual to hear threats or someone yelling at the trustee." [*Id.* at p. 2] Wilson states that the day in issue "was no different" and,

-3-

after entering Unit H, he heard an inmate (identified as "J.W.") yelling behind his door while he was cleaning. [*Id*.] Wilson explains that he "paid it no mind because he was locked up and [he] was safe, so [he] continued working." [*Id*.]

Wilson then claims that, while he was still in the subday room, he heard J.W. ask Ibarra to open the door to the cell so that J.W. could get out. [*Id*.]² According to Wilson, in response to the inmate's request, Ibarra opened the door electronically and J.W. ran out and started an altercation with the plaintiff during which he (i.e., Wilson) was assaulted. [*Id*. at p. 2-3]

While Wilson alleges that J.W. "started" the altercation [Record No. 1 at p. 4], the surveillance video of the incident reveals that, at the time that J.W.'s cell door (which was at the end of the corridor) was opened, Wilson was standing away from J.W. [R. 9-3 at Time Stamp 7:24:32-7:26:41] After J.W. stepped out of his cell, Wilson quickly moved toward J.W. at the end of the corridor (rather than away from him towards an available exit), whereupon the altercation between J.W. and Wilson commenced. [*Id*.]

---

²     Wilson does not allege any facts suggesting that Ibarra should have realized that J.W.'s request was related to Wilson's presence in the subday room. For example, Wilson does not allege that Ibarra heard J.W. "yelling," or that Wilson reported the yelling, or any threat made by J.W. to Ibarra. In the Incident Report prepared by Ibarra (and submitted by Wilson with his Response), Ibarra states that J.W. came onto the intercom to ask if he could get a broom. [Record No. 16-5] Ibarra also states that he "had eyes on Unit H trustee so this officer had no problem with opening the door in [Unit H] for [J.W.] to get the broom." [*Id*.] However, the trustee to which Ibarra refers in the Incident Report was not Wilson, but was another inmate who was also working in Unit H.

Ibarra claimed he "had no idea that the Trustee (Wilson)," whom Ibarra mistakenly thought was assigned to Unit G, was in the subday room of Unit H. [*Id*.] Wilson disputes whether Ibarra knew that Wilson was in Unit H but does not dispute that J.W. asked Ibarra to be let out of his cell to get a broom. According to Wilson, it was improper for Ibarra to open the door in any event because, per FCDC policy, IBP inmates clean their rooms during their recreation time and the officer is supposed to bring cleaning supplies to the inmate. [Record No. 16 at p. 6-7; 11]

-4-

While the sufficiency of a complaint is generally evaluated with reference only to the face of the complaint itself, *Burns v. United States*, 542 F. App'x 461, 466 (6th Cir. 2013), documents attached to it or incorporated by reference may also be considered when evaluating the defendants' motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.") (citation omitted)). The Court may also consider "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011).

Here, Wilson refers to the surveillance video of the incident in his Complaint. [R. 1 at p. 4] Moreover, he did not object to the Defendants' submission of the video in support of their motion, and further referred to it himself in his response to defendants' motion. [Record No. 16 at p. 3, 11] In addition, the video captures the entire incident and is central to Wilson's allegations that Ibarra's actions caused his injuries. Thus, the Court may properly consider the video in addressing the defendants' motion. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 386-87 (6th Cir. 2017) (consideration of video when ruling on motion to dismiss appropriate where it is mentioned in the complaint, is central to plaintiff's claims, captures the entire incident, and contradicts facts alleged in the complaint, making plaintiff's allegations implausible).

Wilson asserts a constitutional claim against Ibarra under 42 U.S.C. § 1983 for allegedly failing to protect Wilson from the assault by J.W. More specifically, Wilson claims that Ibarra's actions in opening the door to J.W.'s cell while Wilson was in the subday room were contrary to jail policies that "under no circumstances are IBP inmates supposed to be around anyone because of the security threat" and that "classifications are not to be mixed or housed together for the protection of the inmates." [*Id*.] But according to Wilson, notwithstanding the security policies in place, officers have ignored these policies (resulting in inmate fights and assaults) "for years" without being disciplined. Thus, Wilson's claim against the LFUCG is premised upon his allegations that it has become an accepted custom at the FCDC for staff to disregard policies and rules in place regarding the separation of inmates with different security classifications. [*Id*. at p. 5] In short, Wilson alleges that "Ibarra was just doing what he was [accustomed] to seeing when he disregarded the policy and opened the door for the max and IBP inmate to run out and assault me." [*Id*. at p. 5-6]

### III.

The defendants argue that Wilson's Complaint – which repeatedly characterizes Ibarra's conduct as negligent – fails to adequately allege a viable Fourteenth Amendment claim for deliberate indifference/failure to protect against Ibarra. [Record No. 9] They further assert that Wilson is unable to establish the essential element of causation between an alleged constitutional violation and Wilson's alleged injuries because the video recording of the incident establishes that Wilson initiated the physical contact with the other inmate and did not attempt to disengage from the struggle, even after officers responded. [*Id*.] Finally, they contend that, absent a viable underlying constitutional claim against Ibarra, Wilson's municipal liability claim against the LFUCG fails. [*Id*.]

### A.

The United States Supreme Court has long recognized that, under the Eighth Amendment, prison officials "have a duty…to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. Rather, a violation of the Eighth Amendment occurs when a prison official displays "deliberate indifference" to a substantial risk of serious harm to an inmate. *Id*. An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need (objective); and (2) a sufficiently culpable state of mind (subjective). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Thus, to state a viable claim, a plaintiff must allege that a defendant was actually aware of a substantial risk that the plaintiff would suffer serious harm and knowingly disregarded that risk. *Farmer*, 511 U.S. at 837.

While a "failure to protect" claim brought by a convicted prisoner implicates an inmate's rights under the Eighth Amendment, "[t]he Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees." *Westmoreland v. Butler Cnty., Kentucky*, 29 F.4th 721, 726–27 (6th Cir. 2022) (citations omitted). Thus, because Wilson is a pretrial detainee at FCDC, his "failure to protect" claim against Ibarra is governed by the Fourteenth Amendment. This distinction matters because the Sixth Circuit has held that the United States Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), "eliminates the subjective element of a pretrial detainee's deliberate-indifference claim." *Brawner v. Scott Cty., Tennessee*, 14 F. 4th 585, 591 (6th Cir. 2021).

As the court explained in *Westmoreland*:

> Following *Brawner*, a pretrial detainee establishes deliberate indifference by proving "more than negligence but less than subjective intent—something akin to reckless disregard." *Brawner*, 14 F.4th at 596–97 (quoting *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). A defendant must have acted deliberately (not accidentally) and recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 596 (quoting *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970).

*Westmoreland*, 29 F.4th at 728.

Applying this analysis to a failure-to-protect claim against an individual officer, *Westmoreland* held that, to meet the "reckless disregard" standard, "a defendant officer must act intentionally in a manner that puts the plaintiff at substantial risk of harm, without taking reasonable steps to abate that risk, and by failing to do so actually cause the plaintiff's injuries." *Id.* at 729. Even so, while "[a] pretrial detainee need not prove subjective elements about an officer's actual awareness of the level of risk . . ., he must prove the officer was more than merely negligent; the officer must have acted with 'reckless disregard' in the face of 'an unjustifiably high risk of harm.'" *Id.* at 730 (citing *Brawner*, 14 F.4th at 596) (quoting *Farmer*, 511 U.S. at 836). Thus, allegations of negligence are insufficient to state a failure-to-protect claim, even post-*Kingsley* and *Brawner*. *See Kingsley*, 576 U.S. at 396 (noting that "as we have stated, 'liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.'") (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 849 (1998)) (emphasis added in *Kingsley*).

As noted above, the Court has an obligation to construe Wilson's Complaint broadly considering his *pro se* status. However, Wilson's Complaint fails to allege sufficient facts to support an inference that Ibarra acted intentionally in a manner that put Wilson at a substantial risk of harm, as required by *Westmoreland*. Rather, Wilson allegations are that Ibarra's actions were the result of improper training and the institution's lax enforcement of its internal policies

-8-

regarding segregation of inmates, thus inferring that Ibarra was, at most, negligent in his duties. [Record No. 1 at p. 6; *See also id.* at p. 5-6 (alleging that "Ibarra was just doing what he was [accustomed] to seeing when he disregarded the Policy and opened the door for the max and IBP inmate to run out and assault me.")]

Indeed, in the grievance filed regarding the incident (to which Wilson refers in his Complaint as providing the "specifics," [Record No. 1 at p. 4]), Wilson repeatedly states that the incident occurred "due to the Ibarra's negligence" and his improper training. [Record No. 1 at p. 10 (further stating "It's not right I'm getting punished for a officer's negligence. . . . If the officer would have done what was right, none of this would have happen . . . I lost my job which I want back and I suffered injuries do to the officers stupidity being improperly trained and his negligence.")] Wilson repeated his allegations of Ibarra's negligence in his appeal of the denial of his initial grievance (also attached to Wilson's Complaint), accusing jail officials of "trying to cover or downplay the officer's negligence." [*Id.* at p. 12]

Wilson's allegations of negligence are insufficient to establish that Ibarra acted with the requisite "reckless disregard" for Wilson's safety, as "[w]hatever *Kingsley* requires, it is more than negligence." *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 571 (6th Cir. 2020) (quoting *Martin v. Warren Cnty., Kentucky*, 799 F. App'x 329, 338 n.4 (6th Cir. 2020). Nor are Wilson's allegations that Ibarra acted contrary to FCDC policy when he opened J.W.'s cell door upon J.W.'s request sufficient to state a constitutional claim against Ibarra. While such allegations may support a claim of negligence, "the failure to follow internal policies, without more, [does not] constitute deliberate indifference," even in the context of a Fourteenth Amendment claim. *See Griffith*, 975 F.3d at 578 (quoting *Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018)). *See also Meier v. County of Presque Isle*, 376 Fed. Appx. 524, 529

(6th Cir. 2010) (even if deputy was aware of departmental policy requiring transportation of detainee with a blood alcohol content of .30 or above to be transported to a medical facility and failed to comply, this failure is not a per se constitutional violation).

In his response to the defendants' motion, Wilson confusingly denies that his Complaint is premised upon negligence, while also arguing that "the officer's actions [were] negligent." [Record No. 16 at p. 4]  Wilson further argues that "[n]ot only [were] his actions negligent but they pass the deliberate indifference test because Ibarra knew of a big risk of serious harm and ignored the risk and did not do enough to avoid the harm." [*Id*. at p. 7]  But despite the argument in his response, allegations of facts supporting an inference that Ibarra acted with "reckless disregard" and "deliberate indifference" are absent from Wilson's Complaint. Moreover, without supporting allegations of facts, Wilson's characterization of Ibarra's conduct as "reckless" amounts to an unsupported legal conclusion, which need not be accepted as true when evaluating the present motion.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Wilson further argues that Ibarra should have known of the "dangers" of IBP inmates (like J.W.) because of "the risk of harm each inmate in IBP may cause, can cause, and will cause," because of "their assaultive behavior, their aggression, and their inability to get along or be around anyone." [Record No. 16 at p. 4]  According to Wilson, J.W. has "a very assaultive institutional behavior" and "he is one of the worst inmates at this jail." [*Id*. at p. 5]  However, Wilson's allegations regarding J.W.'s status as an IBP inmate and his general history as a difficult inmate are insufficient – without more – to establish that there was a "substantial risk" that J.W. would attack Wilson.  *See Davis v. Chorak*, No. 22-1839, 2023 WL 2487339,

at *3 (6th Cir. Mar. 14, 2023) (plaintiff's allegations that fellow inmate's criminal history and prior behavioral problems created a general security risk insufficient to allege that plaintiff was personally at "substantial risk of assault.") Absent identification of a "substantial risk of harm," Wilson cannot show that Ibarra "failed to 'take reasonable available measures to abate that risk' (the third element), and thereby 'caused the plaintiff's injuries' (the fourth).") *Id*. (quoting *Westmoreland*, 29 F.4th at 729).

The defendants further assert that Wilson cannot establish the fourth element of a Fourteenth Amendment "failure to protect" claim (i.e., that Ibarra's conduct actually caused Wilson's injuries) in light of the surveillance video of the incident. The video recording indicates that the altercation occurred when Wilson quickly advanced toward J.W. after J.W.'s cell door opened. The Court is mindful that, at the motion-to-dismiss stage, consideration of the video is limited. And at this early stage, "[i]f there is a factual dispute between the parties, [the Court] can only rely on the videos over the complaint to the degree the videos are clear and blatantly contradict or utterly discredit the plaintiff's version of events." *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022). However, if "indisputable video evidence contradicts [plaintiff's] pleadings, his allegations are implausible." *Id*.

Wilson alleges in his Complaint that Ibarra "caused" his injuries sustained in the altercation because Ibarra opened J.W.'s cell door in violation of FCDC policy, who then "started" an altercation with Wilson. However, the surveillance video clearly shows that, after J.W.'s cell door opened, it was *Wilson* who quickly advanced toward J.W. (rather than away and in the direction of an available exit) and appears to initiate physical contact with J.W.

Wilson does not address this argument in his response, nor does he otherwise dispute what is shown on the video.[3] Because the surveillance video demonstrates that the altercation causing Wilson's injuries occurred due to Wilson moving toward J.W., his claim that Ibarra's actions were the actual cause of Wilson's injuries is not plausible.

In summary, because Wilson's Complaint fails to adequately allege that Ibarra acted intentionally in a manner that put Wilson at a substantial risk of harm, and because Wilson's claim that Ibarra's actions caused Wilson's injuries is implausible, Wilson's fails to adequately allege that Ibarra acted with "reckless disregard" in the face of an unjustifiably risk of harm. Thus, his Fourteenth Amendment claim against Ibarra will be dismissed.

**B.**

Wilson's claim against the LFUCG is premised upon his allegations that officials at the FCDC have consistently ignored violations of its policies regarding segregation of inmates based on security levels, thus creating a "custom" among FCDC staff of failing to comply with these policies. Under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), a municipal government may be held liable for the constitutional violations of their employees under 42 U.S.C. § 1983 if the municipality's policies or custom led to the constitutional violation. *Id*. at 694-95. However, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Because Wilson has failed to plausibly allege that Ibarra violated the Constitution, his *Monell* claim

---

[3] "As a practical matter, 'it is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'" *Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) (quoting *Rouse v. Caruso*, No. 6-cv-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011).

against the LFUCG also fails. *See Davis v. Chorak*, No. 22-1839, 2023 WL 2487339, at *3 (6th Cir. Mar. 14, 2023).

Accordingly, it is hereby **ORDERED** as follows:

1. Wilson's "Response to Defendants' Reply" [Record No. 20] is construed as an improper sur-reply. The Clerk of the Court is directed to shall **STRIKE** this filing from the record.

2. Defendants' Joint Motion to Dismiss or, in the Alternative, Motion for Judgment on the Pleadings [Record No. 9] is **GRANTED**.

3. Plaintiff's Complaint [Record No. 1] is **DISMISSED**, with prejudice.

4. Any pending request for relief by the plaintiff is **DENIED AS MOOT**.

5. This matter is **DISMISSED** and **STRICKEN** from the docket.

Dated: April 26, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky